**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 23 2013

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-30409 |
| | ) | |
| Floyd H. Mack and | ) | Chapter 7 |
| Pamela C. Mack, | ) | |
| | ) | Adv. Pro. No. 12-3089 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Duane J. Tillimon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Floyd H. Mack, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on a *pro se* complaint filed by Plaintiff. Defendants are debtors in the underlying Chapter 7 case pending in this court. In his complaint, Plaintiff's first cause of action alleges that a debt owed to him pursuant to a state court judgment for passing a bad check, which he alleges constitutes fraud and a theft offense, is excepted from Defendants' Chapter 7 discharge under 11 U.S.C. § 523. In his second cause of action, Plaintiff alleges that there is a presumption of abuse under 11 U.S.C.. § 707(b) such that Defendants' bankruptcy case should be dismissed. In his third cause of action, Plaintiff seeks criminal sanctions under 18 U.S.C. §§ 152 and against Defendants and their attorney for failure to correct allegedly incorrect information in Defendants'

bankruptcy petition. At trial, the court granted Defendants' oral motion for judgment on the pleadings as to the first cause of action, finding that Plaintiff alleged no facts in his complaint under which a presumption of abuse under § 707(b) would arise. The court also granted Defendant's oral motion for judgment on the pleadings as to Plaintiff's third cause of action as this court has no jurisdiction to impose criminal sanctions and Defendants' attorney is not a party in this case. This opinion, therefore, addresses only Plaintiff's claims brought under § 523.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under or arising in a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendants are entitled to judgment on the complaint.

## FINDINGS OF FACT

Defendants are married and, in December 2004, had been tenants of Plaintiff's for approximately two years. Their rent was $1,100 per month, with payments of $275 to be paid weekly on specified dates of the month. [Pl. Ex. 2, p. 19]. By a letter dated December 5, 2004, Plaintiff informed Defendants that they were two weeks behind in the payments and that they needed to bring their payments current by December 22, 2004. [*Id.*]. On December 22, 2004, Floyd Mack delivered a check to Plaintiff in the amount of $550.

The testimony of Plaintiff and Defendants differs as to what transpired at the time the check was given to Plaintiff and thereafter. According to Plaintiff, Defendant told him that the check was good and that he wanted to purchase the house. Plaintiff testified that he did not remember when Defendants moved out of the house but that he thought that they remained in the home for approximately two months after giving him the $550 check. The court does not find Plaintiff's testimony credible. His testimony conflicts with documents in evidence at trial, [Pl. Ex. 1, pp. 91, 95], and with facts alleged by him in a proposed amended complaint filed in this case, which states that he commenced a separate civil action against

2

Defendants as early as January 10, 2005, for damages that included cleaning and repairs beyond normal wear and tear under the rental agreement,[1] [*See* Doc. # 43, Ex. A, ¶ 24]. Plaintiff would not have commenced this lawsuit on January 10, 2005, if Debtors remained in the house. The court instead credits Defendants' testimony that, at the time he delivered the check, Floyd Mack told Plaintiff to wait to cash the check because of insufficient funds in Defendants' account and that he then gave Plaintiff a verbal two week notice that Defendants were moving out. According to Pamela Mack, Plaintiff told them that a verbal notice was insufficient and that a written thirty-day notice was required. The court credits Pamela Mack's testimony that Defendants did, in fact, move from the residence owned by Plaintiff during the first week of January 2005. The court finds the timing of Defendants' move corresponds with Plaintiff's commencement of the civil action for damages on January 10, 2005.

Plaintiff also commenced a separate action against Floyd Mack in Toledo Municipal Court, Lucas County, Ohio, seeking damages due to him passing a bad check. Plaintiff filed a motion for default judgment, attaching exhibits consisting of the dishonored check, a Notice of Dishonored Check sent by him to Floyd Mack, and Plaintiff's affidavit stating only that he received the check from Floyd Mack and it was dishonored, that he mailed the Notice of Dishonored Check to Floyd Mack, and that he received notice from the United States Postal Service that the Notice of Dishonored Check was delivered to the Macks' residence. [Pl. Ex. 2, pp. 23-28]. On April 3, 2007, the Municipal Court granted Plaintiff's motion for default judgment filed in that case and entered judgment, which states in its entirety as follows:

> The Court finds the Motion for Default Judgment of Plaintiff Duane J. Tillimon WELL TAKEN and GRANTED.
>
> The Court finds that the Defendant Floyd Mack passed a bad check in the amount of $550.00 and under Ohio Revised Code Title 23, Chapter 2307 (2307.61) the Plaintiff is entitled to compensatory and liquidated damages in the amount of three times the value of the check, or $1,550.00 plus court costs and statutory interest of 6% per annum since December 22, 2004 the date of the bad check.

[Pl. Ex. 2, p. 29].

Plaintiff employed Chris Joseph, who operated the collection agency Equitable Settlements, to collect the judgment against Floyd Mack. Defendants made payments to Joseph. In addition, they paid at least $465.00 directly to Plaintiff. There is a dispute over the amount of the judgment that remains unpaid

---

[1] The court takes judicial notice of the contents of its case docket and the claims register. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

and as to whether Joseph turned over to Plaintiff all of the payments made to him. According to Pamela Mack, a total of $1,550 has been paid, which amount still falls short of the total due given the award of statutory interest and court costs. By contrast, Plaintiff filed a secured proof of claim in Defendants' Chapter 7 bankruptcy case asserting a debt owed in the amount of $1,991.00. [Claim No. 6].

## LAW AND ANALYSIS

Plaintiff seeks a determination that a debt for passing a bad check that is allegedly owed to him by Defendants pursuant to the default judgment obtained in Toledo Municipal Court is nondischargeable under 11 U.S.C. § 523(a). Although Plaintiff does not specify under which subsection of § 523(a) his claim is brought, the court construes his allegation that the passing of a bad check constitutes fraud and a theft offense as alleging that the debt owed is nondischargeable under § 523(a)(2) and (a)(4). *See Haines v. Kerner*, 404 U.S. 519, 596 (1972) (holding *pro se* pleading to less stringent standard than formal pleadings drafted by lawyers). A creditor must prove exceptions to dischargeability for individual debts under 11 U.S.C. § 523(a), including the exception for fraud, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991). Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

The court notes that Plaintiff's claims under both § 523(a)(2) and (a)(4) are based on a debt owed to him pursuant to the Municipal Court judgment against Floyd Mack for passing a bad check. In order to be entitled to a judgment that the debt is excepted from discharge, Plaintiff must prove, among other things, that Defendants owe him a debt. Pamela Mack was not a party in the action brought by Plaintiff in Municipal Court and there is no evidence showing, or even any allegation of, any involvement by Pamela Mack in the passing of the bad check. Plaintiff, therefore, has not met his burden under either § 523(a)(2) or (a)(4) as to Pamela Mack.

### I. 11 U.S.C. § 523(a)(2)

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services,. . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." While § 523(a)(2)(A) applies to fraudulent misrepresentations other than a statement respecting the debtor's financial condition, a debt obtained by fraud based upon such a statement when the statement is in writing is excepted from discharge under § 523(a)(2)(B).

The mere issuance of a check, however, is not an express or implied representation that there are

sufficient funds to cover the check. *Williams v. United States*, 458 U.S. 279, 284 (1982). In *Williams*, the United States Supreme Court explained:

> [The issuing of the check] did not involve the making of a "false statement," for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false." Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner's bank balance.

*Id.* at 284-85. "Since a check does not make any representation, it cannot make any *mis*representation." *Stewart v. East Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortg. Co.)*, 25 F.3d 338, 341 (6th Cir. 1994). Thus, under the reasoning in *Williams*, the check delivered to Plaintiff by Floyd Mack constitutes neither a "false representation" under § 523(a)(2)(A) nor a "statement in writing" under § 523(a)(2)(B).

Nevertheless, § 523(a)(2)(A) also addresses "actual fraud" as a concept broader than misrepresentation. *See McClellan v. Cantrell*, 217 F.3d 890, 892-93 (7th Cir. 2000); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001). "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." *Vitanovich*, 259 B.R. at 877 (quoting *Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)). A debtor's intent to defraud a creditor under § 523(a)(2)(A) is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.*; *Rembert,* 141 F.3d at 281-82. "If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *Buckeye Retirement Co., LLC v. Kakde (In re Kakde)* 382 B.R. 411, 427 (Bankr. S.D. Ohio 2008); *ITT Final Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991).

In this case, Plaintiff has not shown that Floyd Mack engaged in actual fraud. Although Plaintiff argued that Floyd Mack gave him the check and told him that Defendants wanted to buy the house they were renting so that Plaintiff would not commence an eviction action, the credible testimony of the Macks show otherwise. Floyd Mack asked Plaintiff to hold the check because he acknowledged there were insufficient funds in his account to cover it at that time and gave Plaintiff notice that the Macks would be moving out of the house they were renting within two weeks. And, in fact, the Macks did move out within approximately two weeks. Given the fact that Plaintiff was aware that the check was not supported by sufficient funds in the Macks' account, Plaintiff's failure to commence an eviction action was more likely than not the result of being given the two-week notice that Defendants were moving out. The court finds

5

that Floyd Mack did not engage in actual fraud, that is, he did not engage in any deception to induce Plaintiff to part with property or surrender a legal right.

In so finding, the court has considered the effect of the default judgment entered by the Municipal Court. In the judgment entry, the Municipal Court found that Floyd Mack passed a bad check and that Plaintiff is entitled to, among other things, treble damages under Ohio Revised Code § 2307.61. Section 2307.61 creates a civil action to recover damages from any person who commits a theft offense defined in § 2913.01. Ohio Rev. Code § 2307.61(A). A "theft offense" is defined in § 2913.01(K)(1) to include a violation of § 2913.11, entitled "passing bad checks." A person is guilty of passing a bad check if that person "with purpose to defraud" issues a check knowing that it will be dishonored. Ohio Rev. Code § 2913.11(B) and (F). Because an intent to defraud is thus an element of a civil action for damages for passing a bad check, the court considers any preclusive effect of the default judgment.

Issue preclusion, also known as collateral estoppel, provides that "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Assn. v. State Emp. Relations Bd.,* 81 Ohio St.3d 392, 395 (1998). Under 28 U.S.C. § 1738, the federal full faith and credit statute, a federal court must accord a state court judgment the same preclusive effect the judgment would have in state court. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). In determining whether the prior judgment should be given preclusive effect in a federal action, the federal court must apply the law of the state in which the prior judgment was rendered. *Id.* In this case, the court must apply Ohio issue preclusion principles.

Under Ohio law, there are four elements to the application of the doctrine of collateral estoppel: (1) a final judgment on the merits after a full and fair opportunity to litigate the issue; (2) the issue was actually and directly litigated in the prior action and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with the party to the prior action. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *Cianciola v. Johnson's Island Prop. Owner's Assn.*, 981 N.E.2d 311, 315 (Ohio App. 2012). "Issue preclusion precludes the relitigation of an issue that has been ***actually and necessarily*** litigated and determined in a prior action." *MetroHealth Medical Ctr. v. Hoffmann-LaRoche, Inc.*, 80 Ohio St. 3d 212, 217 (1997) (emphasis added).

There is no question that Floyd Mack was a party to the prior Municipal Court action and that his

fraudulent intent in passing the bad check was also an issue in that action. *Cf. Capitol Chevrolet v. Bullock (In re Bullock)*, 322 B.R. 176, 180-81 (Bankr. M.D. Ala. 2005)(where state bad check statutes include presumptions of fraudulent intent based upon a failure to make a check good after notice, "[b]ankruptcy courts have overwhelmingly rejected the proposition that a presumption contained in a state bad check statute may be used to supply the element of intent in a proceeding under § 523(a)(2)(A)".); *Tusco Grocers v. Coatney (In re Coatney)*, 185 B.R. 546, 549-50 (Bankr. N.D. Ohio 1995). It also appears that the default judgment entered by the Toledo Municipal Court is a final judgment. And even assuming that Mack was duly served with the complaint in that action, a fact that is not in evidence, and, thus, had a full and fair opportunity to litigate the fraudulent intent issue, the second element under *Sweeney*, that the issue has been actually litigated, has not been shown.

Ohio courts have disagreed on whether or how to apply the standards of collateral estoppel, and in particular the "actually litigated" standard, in situations involving default judgments. *See Sweeney*, 276 B.R. at 192 and cases cited therein. The Ohio Supreme Court has not decided this issue. *See Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 386 n.4 (Bankr. N.D. Ohio 1999); *Strodtbeck v. Radke (In re Strodtbeck)*, Adv. No. 11-1153, 2012 WL 2916483, *4, 2012 Bankr. LEXIS 4145, *11-12 (Bankr. N.D. Ohio 2012).

In *Robinson*, Judge Richard L. Speer of this court set forth a test for application of the doctrine of collateral estoppel in bankruptcy court when a default judgment has been entered against a debtor in a prior Ohio state court lawsuit. That test has two elements. First, the state court (and bankruptcy court) plaintiff must have actually submitted to the state court admissible evidence apart from just the complaint. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law that are sufficiently detailed to support application of the doctrine of collateral estoppel in the subsequent action. And "[i]n addition...this Court will only make such an application if the circumstances of the case would make it equitable to do so." *Robinson*, 242 B.R. at 387. The Bankruptcy Appellate Panel for the Sixth Circuit later adopted this test in *Sweeney,* finding it an accurate predictor of how the Ohio Supreme Court would rule on the issue of the preclusive effect to be accorded Ohio default judgments. *Sweeney*, 276 B.R. at 194; *see also Strodtbeck*. 2012 WL 2916483 at *4, 2012 Bankr. LEXIS 4145 at *11-12 (noting that the Ohio Supreme Court has either favorably cited or expressly adopted the Restatement's rules on issue and claim preclusion and concluding that "so long as the court can base its judgment upon the defendant's default," the issues are not actually litigated).

In this case, the only evidence of record presented to the Municipal Court in connection with

7

Plaintiff's motion for default judgment were exhibits showing that the $550.00 check was dishonored and that notice of the dishonored check was provided to Floyd Mack. There was no evidence or express finding by the court that Floyd Mack acted with the intent to defraud. Because the issue was never actually litigated, the default judgment has no preclusive effect with respect to that issue in this proceeding.

For the foregoing reason, the court concludes that Plaintiff did not meet his burden under § 523(a)(2).

## II. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt for embezzlement or larceny. Although the passing of a bad check is defined as a "theft offense" under Ohio law, "theft" is a broader term than "embezzlement" or "larceny." Embezzlement and larceny under § 523(a)(4) are defined and determined according to federal law. *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 165-66 (Bankr. N.D. Ohio 2003); *see Bullock v. BankChampaign*, *N.A.*, –U.S.–, 133 S.Ct. 1754, 1760, 1761 (2013). For purposes of § 523(a)(4), larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Id.* (citing *Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke),* 212 B.R. 375, 381 (Bankr. D. Kan. 1997). Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). Embezzlement and larceny generally refer to the wrongful appropriation of personal property, which is not the circumstance of the "theft offense" in this case. In any event, both embezzlement and larceny require a showing of fraud. As the court has already determined, Plaintiff has failed to prove that Floyd Mack acted fraudulently. Thus, Plaintiff has not met his burden under § 523(a)(4).

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to meet his burden under 11 U.S.C. § 523(a)(2)(A) and (a)(4), and Defendants are entitled to judgment on the complaint. The court will enter a separate judgment in accordance with this Memorandum of Decision.

###